Stultz *et al. v.* The State, *ex rel.* Steele, Prosecuting Attorney.

STULTZ ET AL. *v.* THE STATE, EX REL. STEELE, PROSECUTING ATTORNEY.

JUDICIAL NOTICE.—*Statutes and History of the State.—Population of Cities.* —The courts of this State take judicial notice of its statutes, and also of its history, which includes the population of its cities and towns as shown by the last census of the United States.

SAME.—*Town and City of Huntington.*—The courts of this State take judicial notice that, from the 16th day of February, 1848, until the 7th day of March, 1873, Huntington, the county-seat of Huntington county in this State, was an incorporated town under a special charter, and that, after the latter date, such municipality incorporated under the general law of this State, as " The City of Huntington."

CITY.—*Information Against.— Quo Warranto.—Persons Assuming to Act as City Officers.—Remedy.—Injunction.*—An information in the name of the

Stultz *et al.* *v* The State *ex rel.* Steele, Prosecuting Attorney.

State, on the relation of a prosecuting attorney, against certain persons therein named, as the "pretended officers of" a certain "so-called city," alleged that the defendants were assuming to act as the mayor, common councilmen, marshal, treasurer and clerk of such city ; that they, without any warrant, charter or grant were exercising, and claimed the right to exercise, over the inhabitants and property within certain described territory, certain corporate liberties, privileges and franchises, such as are exercised by the officers of a lawfully incorporated city, in levying and collecting city taxes, issuing city bonds, controlling streets, highways and bridges, regulating the public property and markets, establishing and regulating a fire department and public police, and otherwise acting as such officers ; and that such corporate liberties, privileges and franchises had been, and still were, usurped by the defendants and each of them.

*Held*, on demurrer, the contrary not being alleged, that such city was lawfully incorporated, and that the presumption is that the defendants had been lawfully elected as such officers, and that the information is not authorized by section 749 of the code.

*Held*, also, that injunction is the proper remedy to prevent such officers from exercising such powers outside the city limits.

SAME.—*Annexation to City.*—The legality of the annexation of territory to a city can not be questioned by such an information.

From the Huntington Circuit Court.

*B. F. Ibach, B. M. Cobb, S. H. Buskirk* and *J. W. Nichol,* for appellants.

*L. M. Ninde, A. Zollars, F. T. Zollars* and *T. G. Smith,* for the State.

HOWK, C. J.—In this action, the State of Indiana, on the relation of the prosecuting attorney of the Twenty-Eighth Judicial Circuit, filed an information in three paragraphs, in the nature of a *quo warranto*, against the appellants, as the "pretended officers of the so-called City of Huntington."

The appellants jointly demurred to the entire information, upon the ground that it did not state facts sufficient to constitute a cause of action, which demurrer was overruled by the court, and to this decision they jointly excepted.

The appellants then jointly answered in five paragraphs, to each of which paragraphs the appellee, by its relator, demurred, upon the ground that it did not state facts suffi-

cient to constitute a defence to the information. The court sustained the demurrer to each paragraph of said answer, and to these decisions the appellants excepted. Thereupon the appellants refused to answer further, or to amend their answer, and the court rendered judgment on the demurrer, in favor of the appellee, as prayed for in the information, and the defendants appealed therefrom to this court.

Errors have been assigned by the appellants, in this court, which call in question, and present for our consideration and decision, the sufficiency of the facts stated in each paragraph of the information to constitute a cause of action, and the sufficiency of the facts stated in each paragraph of the appellants' answer to constitute a defence to the appellee's information.

We will first consider and decide the questions presented by the alleged error of the court below, in overruling the appellant's demurrer to the appellee's information. As we have said, there were three paragraphs in this information. In each of these paragraphs, it was alleged that the appellants, as the pretended officers of the so-called city of Huntington, were using, and claimed the right to use, without any warrant, charter or grant therefor, certain corporate liberties, privileges and franchises, particularly specified, over certain real estate or territory, particularly described, in Huntington county, Indiana. Herein lies the only material difference between the three paragraphs, that the real estate or territory, described in each paragraph, is different from the real estate or territory described in each of the other two paragraphs. Therefore, in considering the sufficiency of the information, under the demurrer thereto for the alleged want of sufficient facts, we need only to notice the allegations of one of the paragraphs, for, if one of the paragraphs was sufficient, then the others were also sufficient, and if one was bad on demurrer, so also were the other paragraphs.

Omitting the description of the real estate or territory found therein, we set out the first paragraph of the information, as follows :

" Asbury E. Steel, Prosecuting Attorney for the 28th Judicial Circuit of the State of Indiana, comes here into the circuit court of the county of Huntington, in the State of Indiana, acccording to the form of the statute in such cases made and provided, and upon his own relation gives the court to understand and be informed that George W. Stultz, Patrick O'Brien, Leon T. Bagley, William P. Beeber, William A. Berry, Henry W. Rosebrough, George Gray, Cyrus E. Bryant, William J. Campbell and Theodore Shaffer, for the space of one year last past and more, have used and do use, without any warrant, charter or grant, the following liberties, privileges and franchises, to wit, that of apportioning into wards for a city the following territory, to wit," (we omit the description) " and exercising the powers of a city government, and the rights, powers, privileges and franchises over said territory and every part thereof, which the mayor, common councilmen, treasurer, clerk and marshal of cities have, possess, and employ and legally exercise over territory duly incorporated under the general laws of the State of Indiana, approved March 14th, 1867, and the amendments thereto. That said defendants, during said period, have unlawfully, and without any warrant or authority of law whatever, claimed, held, used and exercised, over said territory and the inhabitants thereof, to wit : That of the providing and using a corporate seal around the margin of which is inscribed ' The City of Huntington, Indiana ; ' that of levying and causing to be assessed on and collected off and from the real and personal property situate in said territory, and on, off and from the inhabitants thereof, such taxes, in such amounts and for such pretended purposes as the duly organized city government, and officers duly elected hereunder, of right might do ; and they, the

defendants, have, for the period aforesaid, without warrant, charter or authority of law, claimed and exercised the right, privilege and franchise of levying upon, seizing and selling the property, real and personal, within said territory, under and by authority of such unlawful assessment and levy of said taxes, and the proceeds of said sales to apply to the payment of such unlawful taxes; that of fixing the amount and rate of said taxes, and of unlawfully collecting the same off and from the property and inhabitants within said territory, and also that of borrowing money and issuing bonds therefor, in the form and similitude of proper corporate bonds of the City of Huntington; that of exercising exclusive power over the streets, highways and bridges within said territory described as aforesaid, and ordering and requiring the same to be improved, repaired, opened, changed, widened, and otherwise altered, and the sidewalks and crossings to be constructed and established, and the expense and cost thereof to be assessed, levied upon and collected upon and off the lots and property adjoining such streets and sidewalks so improved, constructed, opened, widened and established. That said defendants, for the period of time aforesaid, have also used and do use, without any warrant, charter or grant, the liberties, privileges and franchises of regulating the management of the public property, markets and market squares, and the sales of meat, fish and vegetables; to regulate the selling, weighing and measuring of hay, wood, coal and other articles within said territory. That said defendants, without any warrant or authority of law whatever, during said period, have exercised the liberty, privileges and franchise of organizing and establishing a fire department within the limits of said territory, and of appointing fire wardens, and of entering into, themselves or by their agents, all houses, dwellings and out-houses, lots and yards, etc., and viewing the same, and regulating the construction of chimneys, hearths, ovens, and the erection of

stove pipes, and the right to procure fire engines and the apparatus for the extinguishment of fires. That said defendants, without any warrant, charter or authority of law whatever have, during said period, exercised the rights, privileges and franchises of appointing, establishing and regulating a police force, and have removed the members of such police force at their discretion; and to regulate, fix and establish the salaries of the members of such police force. And said defendants, without any warrant, charter or authority of law, for the period aforesaid, have exercised the right, privilege and franchise of acting as common councilmen, mayor, clerk, treasurer and marshal within and throughout the limits of said territory, and of making and enforcing by-laws and ordinances therein and for the government thereof, and of arresting, prosecuting and trying the citizens living within said territory for the disregarding of said ordinances and by-laws, as other mayors, common councilmen, clerks, treasurers and marshals of cities duly organized under the general laws of this State providing for the organization of cities, may of right exercise, do, enact and enforce, and arrest, try and punish. And said defendants, without any warrant or charter as aforesaid, during the period aforesaid, and within the territory aforesaid, have done, and still claim the right to do, all such other acts as mayors, common councilmen, clerks, treasurers and marshals of duly organized cities may of right do, exercise and perform by virtue of the powers granted to them by their respective charters or acts of incorporation, all of which liberties, privileges and franchises aforesaid the said defendants, and each of them, during all the time aforesaid, have usurped, and still do usurp, upon the said State of Indiana, to the great damage and prejudice of said State, and of the citizens thereof. Whereupon the said prosecuting attorney, on behalf of said State, upon his own relation, prays advice of said court in the premises, and due

process of law against the said George W. Stultz, Patrick O'Brien, Leon T. Bagley, William P. Beeber, William A. Berry, Henry W. Rosebrough, George Gray, Cyrus E. Bryant, William J. Campbell and Theodore Shaffer in this behalf, be made to answer to said State of Indiana, by what warrant they claim to have, hold, enjoy and exercise the liberties, privileges and franchises aforesaid."

It will be observed, that there is no allegation in this paragraph of the appellee's information, which in any manner calls in question the fact, that there is a corporation in Huntington county, in this State, known by the corporate name of " The City of Huntington," nor the further fact, if it be the fact, that the appellants, when this suit was commenced, were the lawfully elected and acting officers, to wit, mayor, councilmen, clerk, treasurer and marshal, of said city of Huntington.

We know judicially, that Huntington, the county seat of Huntington county, in this State, was an incorporated town under a special charter, from the 16th day of February, 1848, until the 7th day of March, 1873 ; for this fact is shown by the public statutes of this State, of which we must take judicial notice. Acts 1873, p. 149 ; *Evans* v. *Browne,* 30 Ind. 514; *Turbeville* v. *The State,* 42 Ind. 490.

We know judicially, that, before the commencement of this suit, and subsequent to March 7th, 1873, the incorporated town of Huntington, having more than two thousand five hundred inhabitants, as shown by the last census of the United States, assumed to and did become an incorporated city by and in the corporate name of " The City of Huntington," under the provisions of the general law of this State providing for the incorporation of cities, approved March 14th, 1867. 1 R. S. 1876, p. 267 ; for this fact is shown by the history of the State, of which we take judicial notice. *Carr* v. *McCampbell,* 61 Ind. 97.

We assume, therefore, in this case, in the absence of any

allegation to the contrary in the appellee's information, that the city of Huntington was and is duly and legally incorporated as a city, under and in accordance with the general law of this State for the incorporation of cities. We assume, also, the contrary not appearing, that the appellants were, when this suit was commenced, the lawfully elected and acting officers of said city of Huntington, to wit, the mayor, councilmen, clerk, treasurer and marshal thereof.

Informations in the nature of *quo warranto* proceedings are governed by the provisions of article 44 of the practice act. In section 749 of that act, it is provided as follows :

" Sec. 749. An information may be filed against any person or corporation in the following cases :

" *First.* When any person shall usurp, intrude into, or unlawfully hold or exercise any public office, or any franchise within this State, or any office in any corporation created by the authority of this State.

" *Second.* Whenever any public officer shall have done or suffered any act which, by the provisions of law shall work a forfeiture of his office.

" *Third.* Where any association or number of persons shall act within this State as a corporation, without being legally incorporated.

" *Fourth.* Or where any corporation do or omit acts which amount to a surrender or a forfeiture of their rights and privileges as a corporation, or when they exercise powers not conferred by law." 2 R. S. 1876, p. 298.

The cases provided for, in the section quoted, are the only cases in which an information in the nature of a *quo warranto* may be filed against any person or corporation in this State. The question for decision, therefore, and the controlling question, as it seems to us, in this case, may be thus stated : Does the appellee's information state

a case which comes fairly within the letter or the meaning of the section of the statute above quoted?

It is clear, we think, that the case made by the appellee's information is not authorized by either the second, third or fourth clauses of section 749, above quoted, of the practice act. Therefore, it seems to us, that, unless the information states a case against the appellants, fairly within the purview and meaning of the first clause of said section 749, it does not state facts sufficient to constitute a cause of action, and the appellants' demurrer thereto, for the want of sufficient facts, ought to have been sustained.

Does the appellee's information, by any of its allegations, show that the appellants, or either of them, had usurped, intruded into, or unlawfully held or exercised any public office, or any franchise within this State, or any office in any corporation, created by the authority of this State? This is really, as we think, the controlling question in this case. As preliminary to the consideration of this question, we ought, perhaps, to dispose of another question which, it may be said, either precedes, or at least underlies, the question last stated. We have said that it was alleged, in each paragraph of the appellee's information that the appellants were using, and claimed the right to use, certain alleged corporate or municipal powers over certain described real estate or territory. It was alleged that the appellants, without any warrant or charter therefor, had done and then claimed the right to do, within the described real estate or territory, all such acts as mayors, councilmen, clerks, treasurers and marshals of duly organized cities might of right do, exercise and perform, by virtue of the powers granted to them by their respective charters or acts of incorporation.

It will be observed, however, that it was not alleged in the information, that the appellants were not the lawfully elected and qualified mayor, councilmen, clerk, treasurer and marshal of a city, say of the City of Huntington, duly

organized and incorporated under the general laws of this State for the incorporation of cities. In the absence of such an allegation, it seems to us that we may fairly assume that the appellants were such officers of such an incorporated city, and that, as such officers, they might of right lawfully do, exercise and perform, within the limits of such city, all such acts as such officers were authorized by law to do, exercise and perform. If the appellants were such officers of such a city, it can not be said, we think, that the appellants, or either of them, had usurped, intruded into or unlawfully held or exercised their respective public offices, merely because they had done, and claimed the right to do, within the territory described in the information, all such acts as such officers, of duly organized cities, might of right do within the corporate limits of such cities, even though such territory may not have been within such city limits. It is not alleged, in either paragraph of the information, that the appellants had usurped, intruded into, or unlawfully held or exercised the public offices therein mentioned; but the allegation was, in each paragraph, that they had done, and then claimed the right to do, within the territory described therein, all such acts as the incumbents of such public offices, in duly organized cities, might of right do under the law. Our conclusion is, that the appellee's information does not state a case which is warranted or authorized by any of the provisions of section 749 of the practice act.

It is evident, we think, that the object of this suit was to obtain a judgment, declaring that the territory described in the information was not lawfully within the corporate limits of the City of Huntington. In our opinion, an information in the nature of a *quo warranto* will not lie to determine this question. If the territory described was not lawfully taken within, or annexed to, the town or city of Huntington, and if the appellants, as the officers of said city, unlawfully performed, and claimed the right to

perform, official acts within or over such territory, their acts would be unauthorized and illegal, and they could be enjoined therefrom in a proper suit, brought for that purpose. But we are clearly of the opinion, that the legality of the proceedings, whereby the territory in question was taken within, or annexed to, the City of Huntington, can not be tried and determined, under the provisions of our code, in or by an information in the nature of a *quo warranto*. In High Extraordinary Remedies, section 618, it is said that, where a public officer threatens to exercise the functions of his office beyond its territorial limits, " the proper remedy would seem to be by injunction, rather than by a *quo warranto* information. Thus, the information will not lie to prevent the legally constituted authorities of a city from levying and collecting taxes beyond the city limits, under an act of the legislature extending the limits, and the constitutionality of such an act can not be determined upon a *quo warranto* information." This doctrine is fully sustained by the case, cited in the foot note of *The People, ex rel.,* v. *Whitcomb,* 55 Ill. 172.

In section 617 of the same excellent treatise, the rule is laid down that a *quo warranto* information will not lie, where the party aggrieved can obtain full and adequate relief in the usual course of proceedings at law, or by the ordinary forms of civil action. *The State, ex rel.,* v. *Marlow,* 15 Ohio State, 114. " Nor is the rule, as here stated, limited to cases where the relief may be attained in the ordinary forms of common-law actions, but applies also to cases where the grievance may be redressed by bill in equity, and the existence of an adequate remedy in equity would seem to be a sufficient objection to entertaining proceedings by information." *The People, ex rel.,* v. *Whitcomb, supra; The People, ex rel.,* v. *Ridgley,* 21 Ill. 64.

This rule was recognized by this court, in the case of *The State, ex rel.,* v. *Shields,* 56 Ind. 521, in which it

was held, that a *quo warranto* information would not lie to determine the title to certain real estate, used for school purposes, as between two school corporations.

In section 589 of High Ex. Leg. Remedies, it is further said : " While the principles thus far established indicate the tendency to a somewhat liberal use of *quo warranto* informations, as a means of correcting the usurpation of corporate privileges, the courts will not entertain such informations for the purpose of interfering with or declaring void the legislative action of a municipal body, such as the common council of a city. The power of municipal legislation being properly vested in such a body, the courts will not permit the use of this remedy to inquire into or challenge the manner in which this power has been exercised , nor is it within the legitimate scope of the proceeding by information to declare null and void legislative acts of such a municipal body. Nor will the charter of a municipal corporation be forfeited by proceedings upon an information, because of the passage by the corporate authorities of an alleged illegal ordinance in which they have transcended their powers, the offence charged being at the most but an error of judgment, rather than a wilful abuse of power." *The State, ex rel.,* v. *The City of Lyons.* 31 Iowa, 432 ; *The State, ex rel.,* v. *Town Council of Cahaba,* 30 Ala. 66.

In the case of *The City of Peru* v. *Bearss,* 55 Ind. 576, which was a suit by the appellees, against the appellant, to enjoin the collection of certain taxes, assessed by the corporate authorities of the City of Peru on certain real estate, claimed by the appellees to have been illegally annexed to, and therefore not legally within, the said city, it was held by this court, in substance, that the only adequate remedy for persons aggrieved by such annexation was afforded by a suit, such as the one then before us, to enjoin the city authorities from assessing and collecting taxes on such illegally annexed territory, from the owners

thereof or the residents therein.   The doctrine of the case cited has been approved and followed by this court, in the more recent case of *Windman* v. *The City of Vincennes*, 58 Ind. 480.

It may be said, and has been said by the learned counsel of the appellee, in this case, that the  views expressed in this opinion are not applicable to the case, such as this, of a *quo warranto* information by the State, on the relation of the prosecuting attorney.   To this we  answer, that, under the legislation of this State  in relation to *quo warranto* informations, the State, by its attorney, occupies no higher nor better position than any interested citizen.   An information by the State, on the relation of the prosecuting attorney, must state a case  fairly  within the  purview and meaning of the statute, or the State, by its attorney,  will take nothing by its suit.

In our opinion, the court below erred in  overruling the appellants' demurrer to the appellee's information.

Having reached the conclusion, that the appellee's information was insufficient on the demurrer thereto, we need not now consider the other errors assigned, which call in question the sufficiency of the different paragraphs of the appellants' answer.

The judgment is reversed, and the cause is remanded, with instructions to sustain the appellants' demurrer to the appellee's information.

Opinion filed at November term, 1878, but cause carried to May term, 1879, by a petition for a rehearing then withdrawn.