# CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT,

AT THE

## JANUARY TERM, 1883.

---

MARY HERMAN, respondent, *v.* CHAS. M. JEFFRIES, appellant.

APPEALS — *Exceptions.*— Exceptions of a general nature which do not particularly state the point of exception will be disregarded on appeal.

EXCEPTIONS — *Agreements of counsel will not supply the statute requisites.*— An agreement of counsel that certain matters shall be deemed excepted to, without complying with the requirements of statute as to saving exceptions, will be disregarded. Such exceptions should be written down and filed with the clerk before the cause is submitted to the jury.

*Griswold* v. *Boley,* 1 Mont. 549; *McKinney* v. *Powers,* 2 Mont. 466, and *McKinstry* v. *Clarke,* 4 Mont. 370, affirmed.

SOLE TRADER ACT — *Married woman's separate property list.*— A married woman may protect her separate property from attachment for her husband's debts by filing a list thereof as required by law in the county where she resides at the time of such filing, and the same will hold good till she acquires a residence in another county.

While *en route* from one county to another, such married woman may file this list in any county through which she passes, and such filing would be a protection from seizure in such county. The purpose of the filing is notice, and it is no ground of complaint if such notice is given in all the counties through which a person might pass in moving from one to another. Length or permanency of residence are not necessary to give a right to file such a list. Good faith and rightful ownership are the main essentials.

VOL. IV — 33

*Appeal from Third District, Lewis and Clarke County.*

A. E. MAYHEW and E. W. & J. K. TOOLE, for appellant.

This was an action commenced by Mary Herman, a married woman, against Chas. M. Jeffries, the sheriff of Lewis and Clarke county, for the possession of certain personal property which the said Jeffries, as such sheriff, had theretofore levied an execution upon as the property of Jacob Herman, her husband.   The verdict was for the plaintiff, and the defendant appealed.   Appellant claims that the court below erred in permitting the plaintiff (against the objection of appellant) to introduce in evidence her "declaration as sole trader" (p. 13 of transcript); and embodied in bill of exceptions No. 1 (Record, p. 12).

The declaration was incompetent.   First.   Because the instrument only purports to give authority to Mary Herman to do business in *Missoula county* (Record, p. 13), and the proof shows she had left Missoula county intending to locate at some other place.   Record, pp. 19 and 20. Second.   It does not appear that said declaration was made before a person authorized by law to take acknowledgments.   5th division Revised Statutes, p. 589.

The acknowledgment appears to have been taken before a person named Anderson Buker, who subscribed himself "justice of the peace."   What authority is attached to such a signature as that?   There is no seal to give it verity — no proof that he was a justice of the peace or a *de facto* officer.   This declaration is presented outside of the jurisdiction of Missoula county, and the court below, sitting in another county, took it for granted that "Anderson Buker" was a justice of the peace because the county recorder (or a person assuming to be, whose signature is not authenticated by a seal) placed the same upon record.   Appellant claims this was error.   The court in Missoula county might have taken judicial notice of the

officers of that county, but it was presuming too much for the court below.

2. There was error in permitting the plaintiff to introduce in evidence the list of separate property embraced in defendant's bill of exceptions No. 2 (Record, p. 15). This statute, giving to married women unusual rights, is in derogation of the common law, and ought to be strictly construed against them. 5th division Revised Statutes, p. 588, sec. 586.

In order to make this statute available for the purpose intended, the court will require a strict compliance, and will not give the statute such a construction as that it will yield and bend to any mere local inhabitancy of a party. The statute referred to requires the list to be filed in the county where she resides. R. S. p. 588, sec. 586.

The testimony is uncontradicted that she had left Missoula county and had Benton as the objective point; stopped near Helena, in Lewis and Clarke county (where the list was filed), and where levy was made, but that she "had not settled where we would go." Record, pp. 19 and 20. Under such circumstances, the plaintiff's own indecision put her in such a situation that the law leaves her without a residence at the time the list was filed. *Burrows* v. *Miller*, 4 How. Pr. 349; *Stewart* v. *Platt*, 11 Otto, 735.

To have obviated this difficulty, she might have first established her residence, and then filed her list and removed her property; but a condition of things, analogous to those under consideration, have been the subject of judicial decisions, and it may not be profitable to discuss how the difficulty may have been avoided.

3. The court erred in refusing defendant's instruction on page 61, Record, for the reason set out in the objection of appellant in bill of exception No. 1. Buker's authority should have been shown.

4. The failure to give instruction No. 12, asked for by defendant, was, we claim, an error, which, in addition to those enumerated above, ought to reverse this case. It was uncontradicted that the indebtedness against Jacob Herman, upon which the levy in this case complained of was made, was created as early as 1878, and that no sole trader papers were filed by Mary Herman until in 1877, and no list filed until August, 1880. When Mary and Jacob Herman married, her legal existence was suspended or incorporated into that of her husband, and until she complied with the statute relating to married women she was incapable of holding any personal property. Her earnings belonged to her husband. 1 Black. Com. 441; 2 Black. Com. 443; 2 Kent Com. 112; Schouler's Dom. Rel. 111 *et seq.* Then the debt for which the levy was made being a pre-existing one, and the title to all personal property claimed by his wife, either through purchase or gift, being vested in the husband prior to a filing of list or declaration, and the husband being insolvent, we do not believe that the husband, as against such an existing creditor, will be permitted to divest himself of such property prior to its being listed. It was the husband's because the wife could not hold it. The creditor had a right to subject it to his debt; and to permit the husband in embarrassed circumstances to thus divest himself of property which the law declares to be his by a simple filing of his wife, would be a fraud upon the creditor that the courts ought not to uphold. *Guttman* v. *Scannell,* 7 Cal. 455; *Hurlburt* v. *Jones,* 25 Cal. 225.

The proposition of mingling the property of the husband and wife, as announced in instruction No. 13, asked by defendant and refused by the court, was the law, and under the evidence was applicable to the case. See Record, p. 00; Wells on Separate Property, "Married Women."

Shober & Lowry and Sanders & Cullen, for respondent.

Respondent, for answer to appellant's brief, submits the following:

1. This was an action commenced by the respondent against appellant for wrongfully taking her property. The appellant seeks to justify on the ground that the property was not hers, but was the property of Jacob Herman, her husband.

2. The questions involved in the case were: 1st. Was the property, at the time levied upon by defendant, the property of Mary Herman? 2d. Had she complied with the laws of the territory in so placing a list on file or in making her declaration as sole trader, and recording the same as required by law, so as to exempt her property from the debts and liabilities of her husband?

3. We contend that she had strictly complied with sec. 868, p. 589 of the Revised Statutes of Montana territory, in making her declaration, and recording the same in Missoula county April 16, 1877. See Record, pp. 13, 14. Also with sec. 866, p. 588, by having filed a list of her separate property with the county clerk and recorder of Lewis and Clarke county, Montana territory (where the property was taken by defendant), on the 5th day of August, A. D. 1880, and prior to defendant taking possession of the same. See Transcript, pp. 15–18. The one relating to the separate property of married women, and the one in relation to married women as such traders.

. Our statute is very clear, emphatic and unambiguous. Sec. 866, p. 588, R. S. " The property owned by any married woman before her marriage, and that which she may acquire after marriage by descent, gift, grant or *otherwise*, and the increase, use and profits thereof, shall be *exempt from all debts* and liabilities of the husband (unless for necessary articles procured for the use of herself and her children under the age of eighteen years)."

It is not contended that this was a debt created for

necessary articles for plaintiff or her children, and all that the law required was that a list of the said property of plaintiff be filed with the recorder of the county in which she resided to exempt it from any debt or liability of the husband, without any reference as to when or where such debt or liability was created.

At the time of filing the list of separate property plaintiff was in Lewis and Clarke county, Montana territory, and had no other residence. See testimony, Transcript, p. 20. Also, thought of settling in Helena when she left Missoula. See Transcript, p. 19; also testimony of Jacob Herman, pp. 22, 23. Helena was the point of destination when we left Missoula.

5. The declaration as "sole trader" was certainly upon its face regular and properly acknowledged and duly recorded, as appears by the transcript, pp. 13 and 14. The document, being recorded and in possession of plaintiff, was the only proper evidence. Sec. 609, p. 154, R. S.

6. There is no denial that Buker, before whom the declaration was acknowledged, was a justice of the peace. Even the depositions of defendant were taken by the same person. The presumption of law is that the officer acknowledging the same was duly authorized so to do. It was proper evidence to show that when the plaintiff owned the same before coming to Lewis and Clarke county. The separate property list of plaintiff was certainly proper evidence in the case. It was properly made out — contained a full and complete description of her separate property taken by the defendant, and was recorded in the only county in which plaintiff had a residence or resided at the time the property was seized and in the county where taken and before the property was taken. The evidence is to the effect that when plaintiff left Missoula, Helena was the objective point and not Benton. See Transcript, pp. 19, 20, 22, 23.

The only safe way for a married woman to protect her separate property from the debts or liabilities of her hus-

band in the territory of Montana, is to record in every
county where she resides or passes through with the
same, a separate list thereof — then she is safe beyond
question.

The authority cited in 11 Otto, p. 735, is wholly inap-
plicable, and in no particular supports defendant's theory.
That was a case in bankruptcy, and a joint assignment
for the benefit of the husband's creditors was held good.

We have had a judicial interpretation of the statutes of
Montana territory by the supreme court of this territory,
affirmed by the supreme court of the United States,
respecting the separate property of a married woman.
*Griswold* v. *Boley*, 1 Mont. 550 *et seq.*

When a list of the separate property of the wife is
recorded as required by statute, it is entirely freed from
the debts of the husband as fully and completely as if the
marriage relation did not exist.   When the statute is
complied with, the prohibition is absolute.   And as to
the separate property of the wife, it is competent for her
to make her husband her agent.   The record is notice,
and all persons are bound to take notice of the same.   1
Mont. 559; *Knapp* v. *Smith*, 27 N. Y. 280; *Gage* v. *Dau-
chy*, 34 N. Y. 293; *Wells* v. *Buckley*, 33 N. Y. 518.   The
authorities above cited should settle the law of this case
beyond controversy.

We are not trying this case by the "common law," but
by and under the laws of the territory of Montana.
Hence the authorities cited in 1 and 2 Blackstone, 2
Kent, and Schouler on Domestic Relations, are wholly
inapplicable.   The authorities cited in appellant's brief,
to wit, 7 Cal. 455, and 25 Cal. 225, are not in conflict with
any position assumed by respondent, but strongly sup-
port the position maintained by respondent.

The questions of ownership and fraud were fairly sub-
mitted to the jury under the evidence and the instructions
of the court.   The jury found the issues in favor of the
plaintiff, and the evidence and law fully warranted and

justified the verdict. See testimony, Transcript, pp. 11, 12, 19–26. Plaintiff first got her start in 1864 (p. 11). Was given a colt by Heineman in 1868. See deposition, Transcript, p. 25. The testimony of defendant's witness Louise Dobbins corroborates the evidence of plaintiff. See Record, pp. 29 and 30. In fact no point is made in appellant's brief that the verdict is not supported by the testimony.

12. There are no exceptions saved to any instructions given or refused which are sufficiently specific to present the same for review. The exception to instructions refused, Nos. 11, 12 and 13, is general, and if any portion of said instructions were erroneous, the exception is of no force or effect. See Exceptions, p. 63. The same may be said of those given by the court. See Exceptions, p. 55; also p. 61. The same may be said of the exception to the introduction of the sole trader paper in evidence. See Exception No. 1, Transcript, pp. 12 to 15.

Exception to the charge of the court should point out the specific portions of the charge excepted to. A general exception to the charge of a court will not be sustained, even when taken to each and every part. *Lincoln* v. *Chaffin*, 7 Wall. (U. S.) 132; *Magee* v. *Badger*, 34 N. Y. 247; *Hicks* v. *Coleman*, 25 Cal. 122; *Chamberlin* v. *Pratt*, 33 N. Y. 47–52.

13. If the instruction No. 13 refused by the court, referred to in appellant's brief, was properly excepted to, it would avail nothing. There was no evidence to warrant the giving of said instruction. No instruction should be given to the jury which is not predicated upon some theory logically deducible from some portion of the testimony. There was no evidence to warrant any such instruction. *People* v. *Sanchez*, 24 Cal. 28; *Conlin* v. *S. F. & S. J. R. R. Co.* 36 Cal. 404; *People* v. *Byrne*, 30 Cal. 206; 3 Estes, 269.

We conceive that the instructions of the court given at the request of the defendant were as favorable to de-

fendant as the evidence or law would warrant. See instructions Nos. 1 to 11, transcript, pp. 55 to 61. The instructions given at request of plaintiff fairly presented the law under the evidence. See instructions Nos. 1 to 8, transcript, pp. 51 to 55. See, also, *Griswold* v. *Boley,* 1 Mont. 550 *et seq.*

The filing of the proper certificate in Missoula county constituted the plaintiff Mary Herman a sole trader, not alone in that county, but in the territory of Montana. Her property would therefore be exempt as such sole trader, notwithstanding it might be found in some other county in the territory.

REPLY OF APPELLANT.

Appellant offers the following in reply to the points of respondent:

The act of the legislative assembly of this territory which authorized a married woman to become a sole trader was passed in 1874. Laws of 1874, p. 93. The debt of Jacob Herman, for which the levy in this case was made, was contracted in 1864. See Record, p. 00. So far, then, as this act is concerned, up to the date of its passage the personal property of the wife, by whatever means acquired, belonged absolutely to the husband. How, then, could the act, as against *existing creditors,* make it her separate property ? The rights, so far as the creditor was concerned, became vested. The husband himself could not settle the property upon his wife, because he was in embarrassed circumstances. This has been uniformly held. It could not be done by operation of law, because the rights of the creditor had become vested. *Gledden, Murphy & Co.* v. *Taylor,* 16 Ohio St. 518; *Jassay* v. *Delino,* 65 Ill. 469; *McDavid* v. *Adams,* 77 Ill. 155; *Kase* v. *Paynter,* id. 543; Wells, Sep. Prop. Married Women, p. 183, sec. 129; *Gun* v. *Barry,* 16 Wall. 610.

Concerning the "listing," it may be said that the in-

tention of the legislature must have been to exempt it from all debts and liabilities of the husband created after the filing of such list. This must be true, because we have shown that, prior to such filing, the property was the husband's, and, consequently, a creditor had a right to contract with reference to it being the husband's. This construction is supported by the authorities last cited above.

WADE, C. J. In this action the plaintiff, who is a married woman, seeks to recover from the defendant, the sheriff of Lewis and Clarke county, the value of certain horses, claimed by her as her sole and separate property, which were seized on execution and sold to satisfy a judgment against her husband.

1. To maintain her right and title to the property in question, the plaintiff, among other things, offered, and the court received, in evidence her declaration as a sole trader, and thereupon the defendant filed a bill of exceptions, which, after setting out the declaration, acknowledgment thereof and indorsements thereon, showing that the same had been duly recorded, proceeds as follows: "To the introduction of which (said declaration) defendant objected, which objection was by the court overruled, to which ruling defendant then and there duly excepted, and this, his bill of exceptions, is signed accordingly."

This objection is fatally defective, for that it does not point out in what respect the declaration is claimed to have been objectionable. The statute provides, sec. 281, that "the point of the exception shall be particularly stated," and we have so frequently held that an exception of the character of this one raises no question that we can consider, that it is not necessary to enlarge upon the subject here.

2. The attempt to save exceptions to the instructions of the court to the jury was by virtue of the following

stipulation, which by its language seems to have been entered into by the counsel of the respective parties after the case had been submitted to the jury and they had retired:

## "STIPULATION AS TO EXCEPTIONS.

"It is hereby stipulated and agreed that each instruction given by the court for the plaintiff shall be deemed excepted to by the defendant; and that each exception offered by the defendant which was refused by the court shall be deemed excepted to by the defendant; and that each instruction which was offered by the defendant and modified by the court shall be deemed excepted to by the defendant; and all instructions offered and given for the defendant, and all offered for plaintiff and refused, and all offered by plaintiff and modified, are hereby deemed excepted to."

There was no bill of exceptions as to the instructions; no pointing out of objections to the same; and for all that appears, this stipulation may have been entered into without bringing to the court knowledge of a single objection to the instructions, and after the rendition of the verdict by the jury. The effect of a bill of exceptions is to point out the error complained of, which must be signed by the judge or written down by the clerk. Statutes, sec. 281. An agreement between counsel that certain matters shall be deemed excepted to, without complying with the statute as to saving exceptions, is of no consequence whatever. As to exceptions to instruction to the jury, the statute (sec. 253) provides: "If any party to the trial desires to except to any instruction given by the court, or to the refusal of the court to give an instruction asked for, or any modification thereof, he shall reduce such exceptions to writing, and file the same with the clerk, before the cause is submitted to the jury."

The stipulation aforesaid is in no sense a compliance with the statute.

This court, at the January term, 1882, in the case of *McKinstry* v. *Clark & Cameron*, 4 Mont. 370, affirming *Griswold* v. *Boley*, 1 Mont. 549, and *McKinney* v. *Powers*, 2 Mont. 466, held as follows: "The law requires the judge to indicate by numbering and marking the instructions offered to him, so that it shall distinctly appear what he gives, refuses or modifies. It also requires the parties to a suit, desiring to except to this action of the court, to specify the same in writing as to each instruction, and the objection to the same, so that the court may know whether the objection exists to the modification, or the giving, or the refusal of the court to give, the instruction. A general objection to all and to each of the instructions, that they are not law, or are misleading to the jury, is not enough. This is the doctrine of the cases cited, and is affirmed in this case."

3. The plaintiff, to further maintain her action, offered in evidence a list of her separate property, filed and recorded in the county of Lewis and Clarke, where the property was, and where the same, subsequent to such filing and recording, was seized by the defendant. The defendant objected to this evidence, for the reason that it was not shown that the plaintiff was a resident of the county in which the list was recorded, at the date of such record. The objection was overruled, and the defendant duly excepted.

It appears from the bill of exceptions that it was in evidence that the plaintiff with her family, at the time of the filing of the list, was camped in Lewis and Clarke county, and had the property in such county, and had removed to said county from Missoula, and had no residence outside of the county of Lewis and Clarke at the time of filing said list. It further appears from the evidence, which is properly before us, this being an appeal from an order overruling a motion for a new trial, that

at the time the list was filed the plaintiff was at Hot Springs, Lewis and Clarke county; that she had no other place of residence than Lewis and Clarke county, and that Lewis and Clarke county was her point of destination when leaving Missoula.

Being in Lewis and Clarke county with her family, that county being her destination when she left her former residence in Missoula, and having no residence outside of that county, her separate property list was properly filed in the county of Lewis and Clarke, where the property was, and where she resided, having no other place of residence.

There is no testimony tending to show that Choteau county was her objective point when leaving Missoula county. But if there was, and she had been *en route* to Choteau county when she stopped in Lewis and Clarke county with her property, still she might protect her separate property from the debts of her husband by causing a list thereof to be recorded in Lewis and Clarke county, or any other county through which she passed on the way to her future residence. She had left her residence in Missoula county and had not gained a residence in Choteau county. Her residence in Missoula county, and her declaration as sole trader and separate property list in that county, would protect her property until she had gained a residence in some other county, and while her property was so *en route* to such other county. Perhaps she was in search of a residence, taking her property with her. In such a case it was proper for her to file a list of her separate property with the recorder of every county that she entered, and apparently such a course was not only proper, but necessary. A married woman is not prohibited from changing her residence from one county to another, and she may protect her separate property wherever she goes. The purpose in requiring a separate list to be recorded is notice, and this purpose is

accomplished though the residence be for a longer or shorter period.

The defendant ought not to complain that the plaintiff gave too much notice of her rights. He would not have been injured if she had filed her separate property list in every county in the territory, and that would have been a proper precaution, if she had abandoned her residence, and was driving her horses from county to county, seeking another residence. Any other construction of the statute would deprive a married woman of its benefits, unless she remained a permanent resident of the county in which her separate list was first filed, and would expose her property to seizure for her husband's debts, if she undertook in good faith to change her residence.

If good faith characterizes the transaction, and the ownership of the wife is in no manner tainted with fraud, she may protect her property within the territory by complying with the statute, no matter for how short a period she may have resided in the county where the list is filed, providing she has no residence elsewhere.

If a married woman, a sole trader, in the business of raising and selling horses in the county of Missoula, wished to change her residence to some other county within the territory, in the hope of finding better ranges or conveniences for her business,— perhaps to Dawson, Custer or Gallatin county,— and should set out with her property, seeking a new residence, and it should require thirty or forty days to accomplish the journey, she may protect her property while *en route* (if her residence in Missoula and her declaration as sole trader, and separate list in that county, would not protect it until she had gained another residence within the territory), by filing her property list in each county that she entered, providing she had no residence outside of such county. And in such case a creditor of the husband would have no cause to complain. If she was still a resident of Missoula

county, her declaration would protect the property until she had lost her residence there and gained one elsewhere. If she had lost her residence in Missoula, and had no residence outside of the county where her list was filed, then her residence was within such county, and her list properly filed there. If a person has gained a residence in one place, he retains it until he has gained a residence elsewhere.

The judgment is affirmed, with costs.

*Judgment affirmed.*